1

2

3

4

5              UNITED STATES DISTRICT COURT

6              EASTERN DISTRICT OF WASHINGTON

7    WYCKOFF FARMS,
     INCORPORATED, a Washington          NO. 4:20-CV-5095-TOR
8    corporation,
                                          ORDER DENYING DEFENDANTS'
9                        Plaintiff,       MOTION TO DISMISS AND
                                          ALTERNATIVE MOTION FOR A
10        v.                              MORE DEFINITE STATEMENT

11   INDUSTRIAL CONTROL
     CONCEPTS, INC., d/b/a ICC, INC.,
12   a Missouri corporation, ICC
     NORTHWEST, INC., an Oregon
13   corporation, and ICC TURNKEY,
     INC., a Missouri corporation,
14
                        Defendants.
15

16        BEFORE THE COURT is Defendants' Motion to Dismiss for Failure to

17   State a Claim and Alternative Motion for a More Definite Statement (ECF No. 11).

18   These matters were submitted for consideration without oral argument.  The Court

19   has reviewed the record and files herein, the completed briefing, and is fully

20   informed.  For the reasons discussed below, Defendants' Motion to Dismiss for

     ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND
     ALTERNATIVE MOTION FOR A MORE DEFINITE STATEMENT ~ 1

Failure to State a Claim and Alternative Motion for a More Definite Statement (ECF No. 11) is **DENIED**.

## BACKGROUND

This case generally concerns construction contracts related to an extraction facility. ECF No. 1. On June 12, 2020, Plaintiff filed a Complaint against Defendants Industrial Control Concepts Inc. ("ICC"), ICC Northwest, Inc. ("ICC NW"), and ICC Turnkey, Inc. ("ICC Turnkey"). ECF No. 1. On September 10, 2020, Defendants filed the instant Motion to Dismiss for Failure to State a Claim and Alternative Motion for a More Definite Statement. ECF No. 11. Plaintiff and Defendants timely filed their respective response and reply. ECF Nos. 12-13. The following facts are drawn from Plaintiff's Complaint and construed in the light most favorable to Plaintiff. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

In May 2019, Plaintiff Wyckoff Farms solicited quotes from Defendants for stainless steel tanks for use in an extraction plant Plaintiff intended to build in Prosser, Washington. ECF No. 1 at 2, ¶ 8. On May 17, 2019, the parties executed an agreement (the "Tank Contract") for the purchase of 30 stainless steel tanks for $876,000. ECF No. 1 at 3, ¶ 9.

On or about June 14, 2019, the parties executed a second agreement (the "Engineering Contract") pertaining to the engineering of the extraction plant. ECF

No. 1 at 3, ¶ 11. The Engineering Contract required Defendants "to deliver 'an engineering report, documents, diagrams, and models that integrate and close the gaps between the various components of the Wyckoff Extraction facility…' and prepare proposals for the piping system, multi zone CIP system, and integrated control and data collection system." ECF No. 1 at 3, ¶ 12. Defendants represented that the Engineering Contract would "identify the full scope of work and materials required to integrate the various components" needed for the extraction facility. ECF No. 1 at 3, ¶ 13.

On or about August 9, 2019, the parties executed a third agreement (the "Piping Contract") regarding the interconnective piping needed at the extraction facility. ECF No. 1 at 3, ¶ 14. The Piping Contract "required [Defendants] to design, fabricate, and deliver piping needed to connect the various Extraction Project components for a fixed price of $368,000." ECF No. 1 at 4, ¶ 15. Defendants also "agreed to install and build the Piping Contract system on a time and material basis plus travel expenses, not to exceed $135,000. ECF No. 1 at 4, ¶ 16.

On or about August 19, 2019, the parties executed a fourth agreement (the "Control System Contract") regarding the electronic control system needed at the extraction facility. ECF No. 1 at 4, ¶ 17. The Control System Contract "required [Defendants] to design, fabricate, and deliver the electronic system needed to

operate the various Extraction Project components at a fixed price of $801,000."
ECF No. 1 at 4, ¶ 18.  Defendants "agreed to install and build the Control System
Contract components on a time and materials basis plus travel expenses, not to
exceed $140,000."  ECF No. 1 at 4, ¶ 19.  Additionally, under the Control System
Contract, commissioning and start up was provided for at an hourly rate for the
commissioning and start-up engineer, not to exceed $54,000.  ECF No. 1 at 4, ¶ 20.
Finally, "out-of-scope materials necessary to carry the Piping Contract and Control
System Contract were to be provided on a cost plus 10% basis."  ECF No. 1 at 4,
¶ 21.

Each contract incorporates the same appendix, requiring Defendants to
"defend, indemnify, and hold harmless [Plaintiff] from and against all claims,
actions, proceedings, liabilities, losses, damages, costs and expenses, arising out of
third party actions, including reasonable attorney's fees and defense costs, which
[Plaintiff] may sustain resulting from the acts or omissions of [Defendants]."  ECF
No. 1 at 7, ¶¶ 39-40.

Once the parties executed the four contracts, Defendants notified Plaintiff
that it "identified 686 missing pieces of equipment, valves, instruments, and
specialty items that [were] currently not supplied by any other vendor under
contract.  In addition … substantial amounts of installation, including piping,
insulation, structures, and electrical work, is uncovered."  ECF No. 1 at 5, ¶ 22.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND
ALTERNATIVE MOTION FOR A MORE DEFINITE STATEMENT ~ 4

Defendants informed Plaintiff that an additional agreement (the "Gap Contract") was needed to address the missing equipment and uncovered work. ECF No. 1 at 5, ¶ 24. Plaintiff relied on Defendants' expertise and representations and executed the Gap Contract, requiring Defendants "to procure and deliver all remaining materials needed to operate the various Extraction Project components at a fixed price of $1,638,195." ECF No. 1 at 5, ¶ 25. Defendants "agreed to install the Gap Contract components on a time and materials basis, estimated at $922,572, plus travel expenses." ECF No. 1 at 5, ¶ 26. Additional out-of-scope materials necessary for this contact were to be provided on a cost plus 15% basis. ECF No. 1 at 6, ¶ 27.

In April 2020, Plaintiff discovered Defendants had significantly overbilled on the extraction facility projects by double-billing certain equipment and materials, charging for work not actually performed, and charging for travel expenses not related to the contracts or pre-approved by Plaintiff. ECF No. 1 at 6, ¶¶ 29-31, 33. Plaintiff requested documentation to substantiate the bills, and Defendants submitted falsified time card records. ECF No. 1 at 6, ¶ 32.

That same month, Plaintiff discovered that Defendants were not paying their subcontractors. ECF No. 1 at 7, ¶ 35. As a result, Plaintiff sought assurances that Defendants could complete the contract work, which Defendants failed to provide. ECF No. 1 at 7, ¶¶ 36-37. Plaintiff notified Defendants that it believed they

anticipatorily repudiated their contracts, and Defendants subsequently discontinued all work on the extraction facility.  ECF No. 1 at 7, ¶ 38.

On May 27, 2020 one of Defendants' subcontractors, NIPR, LLP, recorded a Notice of Claim of Lien against Plaintiff's property.  ECF No. 1 at 7-8, ¶¶ 41-42. The lien claims that Defendant "ICC NW owes NIPR the principal amount of $314,792.15 plus interest at a rate of 12% for work performed on the Extraction Project for which NIPR has not been paid."  ECF No. 1 at 8, ¶ 42.

Defendants have refused to defend, indemnify, or hold harmless Plaintiff from the subcontractor's lien as required under the appendix attached to each contract.  ECF No. 1 at 8, ¶ 43.  Plaintiff has also overpaid Defendants no less than $1.3 million.  ECF No. 1 at 6, ¶ 34.

**DISCUSSION**

**A.  Motion to Dismiss Standard**

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss the complaint for "failure to state a claim upon which relief can be granted."  "The burden of demonstrating that no claim has been stated is upon the movant."  *Glanville v. McDonnell Douglas Corp.*, 845 F.2d 1029 (9th Cir. 1988). A motion to dismiss for failure to state a claim will be denied if the plaintiff alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

While the plaintiff's "allegations of material fact are taken as true and construed in the light most favorable to the plaintiff[,]" the plaintiff cannot rely on "conclusory allegations of law and unwarranted inferences [] to defeat a motion to dismiss for failure to state a claim." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (citation and brackets omitted). That is, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. When deciding, the Court's review is limited to the complaint, documents incorporated into the complaint by reference, and judicial notice. *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

**B.  Breach of Contract**

Defendants argue Plaintiff has failed to state a claim for breach of contract "[b]ecause Plaintiff fails to allege facts that show how *each* Defendant was a party to each contract, and that each Defendant breached a precise duty under specific contract provision." ECF No. 11 at 4. Plaintiff argues that the factual representations apply to each Defendant, and Defendants will have to engage in discovery for more specific details. ECF No. 12 at 6.

Under Washington law, a plaintiff "must prove a valid contract between the parties, breach, and resulting damage."  *Lehrer v. State, Dep't of Soc. & Health Servs.*, 101 Wash. App. 509, 516 (2000) (internal citation omitted).

Here, the essence of Defendants' argument is that Plaintiff must be more specific by delineating duties as to each separate Defendant.  Plaintiff has identified the existence of five contracts.  *See* ECF No 1. at 3-6, ¶¶ 9-27.  Plaintiff alleges that each Defendant had obligations under these contracts, materially breached these contracts, and Plaintiff suffered harm as a result.  ECF No. 1 at 8, ¶¶ 44-48.  At this stage, Plaintiff has plausibly alleged a breach of contract claim as to each Defendant.

**C.  Anticipatory Repudiation**

Defendants argue Plaintiff has failed to state a claim for anticipatory repudiation where Plaintiff "fails to plead 1) the contracts and provisions which required Defendants to provide 'adequate assurances' to Plaintiff, and 2) what clear and positive statements were made by Defendants which express their intent to repudiate the contracts."  ECF No. 11 at 5-6.  Plaintiff argues that Defendants anticipatorily breached the contracts where Defendants failed "to pay subcontractors" … "coupled with their act of walking off the job once financial assurances were requested."  ECF No. 12 at 8.

1    Under Washington law, an anticipatory breach occurs when a party to a

2 bilateral contract either expressly or impliedly repudiates the contract prior to

3 performance. *Wallace Real Estate Inv., Inc. v. Groves*, 124 Wash. 2d 881, 898

4 (1994). Repudiation occurs by a "positive statement or action by the promisor

5 indicating distinctly and unequivocally that he either will not or cannot

6 substantially perform any of his contractual obligations." *Id.* (internal quotation

7 omitted).

8    Defendants focus on the lack of "clear and positive statements." ECF No.

9 11 at 6. However, statements are not the only way to anticipatorily breach a

10 contract. Plaintiff's allegations in the Complaint – that Defendants failed "to pay

11 subcontractors" and walked "off the job once financial assurances were requested"

12 – plausibly states *actions* by Defendants that indicate Defendants would not

13 substantially perform on the remaining contractual obligations. ECF No. 12 at 8.

14 Therefore, Plaintiff has plausibly alleged a claim for anticipatory repudiation as to

15 each Defendant.

16 **D. Unjust Enrichment**

17    Defendants argue Plaintiff has failed to state a claim for unjust enrichment

18 because "Plaintiff already alleged the 'overcharging' was a material breach of an

19 express contract." ECF No. 11 at 7. Plaintiff argues that it may plead theories in

20 the alternative. ECF No. 12 at 9.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND
ALTERNATIVE MOTION FOR A MORE DEFINITE STATEMENT ~ 9

1    Under Rule 8(d)(2), a plaintiff "may set out 2 or more statements of a claim

2  or defense alternatively or hypothetically, either in a single count or defense or in

3  separate ones."  Additionally, a plaintiff "may state as many separate claims or

4  defenses as it has, regardless of consistency."  Fed. R. Civ. P. 8(d)(3).

5    Under Washington law, an unjust enrichment claim requires the plaintiff to

6  show "(1) the defendant receives a benefit, (2) the received benefit is at the

7  plaintiff's expense, and (3) the circumstances make it unjust for the defendant to

8  retain the benefit without payment."  *Young v. Young*, 164 Wash. 2d 477, 484-85

9  (2008).  As such, "[u]njust enrichment is the method of recovery for the value of

10  the benefit retained absent any contractual relationship because notions of fairness

11  and justice require it."  *Id.* at 484 (internal citation omitted).

12    Here, Plaintiff alleges Defendants "overcharged and double-charged

13  [Plaintiff] for work that was never performed, materials that were never delivered,

14  and costs that were not incurred on the Wyckoff Extraction Project," "[Defendants]

15  received in excess of $1.3 million in unearned funds from [Plaintiff]," and "it is

16  unjust for Defendants to retain the benefit of the funds it received in excess of what

17  it was entitled to for the work actually performed and materials actually supplied."

18  ECF No. 1 at 9-10, ¶¶ 55-57.  As the existence and validity of Plaintiff's earlier

19  referenced contracts have not been determined as a matter of law, Plaintiff's

20  alternative theory is plausible.  If this Court determines in subsequent proceedings

that an enforceable contract exists between the parties, Plaintiff's unjust

enrichment claim cannot stand.  However, at this stage, Plaintiff has properly

alleged an alternative claim for unjust enrichment as to each Defendant.

### E.  Failure to Defend and Indemnify

Defendants argue Plaintiff has failed to state a claim for failure to defend

and indemnify because Plaintiff failed to provide "Defendants with any notice of

what contract and term Plaintiff is claiming imposes the duty to defend and

indemnify Plaintiff" and Plaintiff "fails to adequately identify the third-party

claims which Plaintiff is purportedly alleging that each Defendant has a duty to

indemnify and defend Plaintiff against."  ECF No. 11 at 8.  Plaintiff argues that it

adequately pleads the claim by pointing to provisions in the Complaint that

identify the contracts, contract term requiring Defendants to defend indemnify, and

third-party claims triggering the contract term.  ECF No. 12 at 11-12.

Under Washington law, the duty to defend "arises when a complaint against

the insured, construed liberally, alleges facts which could, if proven, impose

liability upon the insured within the policy's coverage."  *Mut. of Enumclaw Ins.*

*Co. v. USF Ins. Co.*, 164 Wash. 2d 411, 420-421 (2008) (internal citation omitted).

However, the duty to defend "is separate from, and broader than, the duty to

indemnify."  *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wash. 2d 55, 64 (2000).

While the duty to defend exists "merely if the complaint contains any factual

1  allegations which could render the insurer liable to the insured under the policy,"

2  the "duty to indemnify hinges on the insured's actual liability to the claimant and

3  actual coverage under the policy." *Id.*  The "duties to defend and indemnify do not

4  become *legal obligations* until a claim for defense or indemnity is tendered." *Mut*

5  *of Enumclaw Ins. Co.*, 164 Wash. 2d at 421.

6      Contrary to Defendants' contentions, Plaintiff identified an indemnity clause

7  that was incorporated by reference into each contract with an appendix, which

8  requires Defendants to "defend, indemnify, and hold harmless [Plaintiff] from and

9  against all claims, actions, proceedings, liabilities, losses, damages, costs and

10  expenses, arising out of third party actions, including reasonable attorney's fees

11  and defense costs, which [Plaintiff] may sustain resulting from the acts or

12  omissions of [Defendants]."  ECF No. 1 at 7, ¶¶ 39-40.  Plaintiff also identified the

13  third-party claim triggering the indemnity clause, and Defendants' refusal to

14  defend and indemnify on the same.  ECF No. 1 at 7-8, ¶¶ 41-43.  Thus, Plaintiff

15  adequately pleads a claim for failure to defend and indemnify.

16  **F.  Unfair and Deceptive Business Practices**

17      Defendants argue Plaintiff has failed to state a claim for unfair and deceptive

18  business practices by failing to plead facts "to indicate: (a) the nature of the unfair

19  or deceptive act or practice; (b) the public interest impact; or (c) the causal link

20  between the alleged deceptive act and each particular Defendant."  ECF No. 11 at

ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND
ALTERNATIVE MOTION FOR A MORE DEFINITE STATEMENT ~ 12

9.  Defendants requests this claim be dismissed or amended to plead specific facts. *Id.*  Plaintiff argues it identified the deceptive acts by alleging Defendants submitted fraudulent records for payment, it shows the public interest impact on "a clear pattern of deceptive billing practices," and it demonstrates the causation alleged as to each individual Defendant.  ECF No. 12 at 13-14.

The Washington Consumer Protection Act ("CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  RCW 19.86.020.  Under RCW 19.86.090, "[a]ny person who is injured in his or her business or property by a violation of RCW 19.86.020 … may bring a civil action" to recover actual damages.  To prevail on a CPA claim, "the plaintiff must prove an (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation."  *Klem v Washington Mut. Bank*, 176 Wash. 2d 771, 782 (2013) (quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 780 (1986)).

The Court finds that Plaintiff has sufficiently alleged facts to the first, second, fourth, and fifth elements.  Under the first element, Plaintiff's allegations that Defendants' overcharged, double billed, and falsified records constitute an unfair or deceptive act or practice.  ECF No. 1 at 6-7, ¶¶ 29-33; *see State Farm Fire & Cas. Co. v. Huynh*, 92 Wash. App. 454, 459 (1998) (Defendant's false

1    billings and reports made for the purpose to increase profits subject to the CPA).

2    Under the second element, Plaintiff sufficiently alleges that these contracts were

3    based on the sale of services for the construction of the extraction facility, meeting

4    the definition of "trade and commerce." *See* RCW 19.86.010(2).  Under the fourth

5    and fifth elements, Plaintiff has adequately alleged that Defendant's overcharging

6    and double billing caused it economic injury in the overpayment of $1.3 million to

7    Defendants.  ECF No. 1 at 6, ¶ 34.

8         Under the third element, "[o]rdinarily, a breach of a private contract

9    affecting no one but the parties to the contract is not an act or practice affecting the

10   public interest." *Hangman Ridge*, 105 Wash. 2d at 790.  However, a plaintiff can

11   establish that the private "lawsuit would serve the public interest by showing a

12   likelihood that other plaintiffs have been or will be injured in the same fashion."

13   *Trujillo v. Nw. Tr. Servs.*, 183 Wash. 2d 820, 835 (2015) (internal citations

14   omitted).  To assess the public interest in a private dispute, courts are guided by

15   "(1) whether the defendant committed the alleged acts in the course of his/her

16   business, (2) whether the defendant advertised to the public in general, (3) whether

17   the defendant actively solicited this particular plaintiff, and (4) whether the

18   plaintiff and defendant have unequal bargaining positions." *Id.* at 836.  No one

19   factor is dispositive. *Id.*

20

ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND
ALTERNATIVE MOTION FOR A MORE DEFINITE STATEMENT ~ 14

1    Here, even viewed in light most favorable to Plaintiff, Plaintiff has failed to

2  allege the public's interest.  Plaintiff summarily alleges that Defendants' conduct

3  affects the public interest.  ECF No. 1 at 10, ¶ 63.  This conclusory legal assertion

4  is insufficient to plausibly state a claim.  *See In re Stac Elecs. Sec. Litig.*, 89 F.3d at

5  1403.  Without alleging more facts indicative of public interest, Plaintiff's unfair

6  and deceptive business practices claim cannot survive a motion to dismiss.

7    **G.  Leave to Amend Complaint**

8    Defendants argue that the claims against Defendants ICC NW, Inc. and ICC

9  Turnkey, Inc. should be dismissed without leave to amend because "Plaintiff

10  conveniently clusters Defendants together, improperly refers to them collectively,

11  and then fails to identify claims against each individual Defendant as it is legally

12  required to do at this stage."  ECF No. 11 at 9.  Defendants further argue that "ICC

13  Inc. is the only party named in all of the contracts."  ECF No. at 9-10.

14    Rule 15(a)(2) instructs courts to "feely give leave [to amend] when justice so

15  requires."  "This policy is to be applied with extreme liberality."  *Eminence*

16  *Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation and

17  citation omitted).  However, a court may deny leave to amend "due to undue delay,

18  bad faith or dilatory motive on the part of the movant, repeated failure to cure

19  deficiencies by amendments previously allowed, undue prejudice to the opposing

20

party …, and futility of amendment." *Zucco Partners, LLC v. Digimarc Ltd.*, 552 F.3d 981, 1007 (9th Cir. 2009) (quotations and citation omitted).

Finding no basis for the contrary, the Court grants Plaintiff leave to amend its complaint to supplement the public interest element, if any, to the unfair and deceptive debt practices claim.  However, finding that Plaintiff has properly made allegations against each Defendant, Plaintiff need not amend to distinguish further among the Defendants.  Defendants can individually answer as to each allegation.

### H.  Motion for a More Definite Statement

In the alternative, much like the argument for denying leave to amend, Defendants move this Court to order Plaintiff to provide a more definite statement, so that specifically "Plaintiff must identify facts and circumstances in its pleading to support *each* claim against *each* identified Defendant such that each ICC, ICC NW, and ICC Turnkey are each able to adequately respond and defend."  ECF No. 11 at 10.  Plaintiff argues that Defendants "sloppy business practices" are to blame where Defendants were "treating each of these entities interchangeably in the contracting process."  ECF No.12 at 15.

Accepting Plaintiff's allegations as true, the Court has found Plaintiff alleges sufficient factual matter to state claims for relief, with the exception for the unfair and deceptive business practices claim, against each Defendant.  Therefore, the Court denies Defendants' alternative motion for a definite statement.  As

previously stated, Defendants may individually answer the allegations and engage in discovery to further defend against the claims.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendants' Motion to Dismiss for Failure to State a Claim and Alternative Motion for a More Definite Statement (ECF No. 11) is **DENIED**.

2. Plaintiff is granted leave to **AMEND** its complaint **within 21 days** of this Order.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

**DATED** October 27, 2020.



THOMAS O. RICE
United States District Judge

ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND
ALTERNATIVE MOTION FOR A MORE DEFINITE STATEMENT ~ 17